TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-96-00208-CV





Tim Bruner, d/b/a Tigris Equipment Company, Appellant


v.


Bodywise, Inc., Appellee





FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY 

NO. 226,749, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING





 This case centers around a contract dispute. The trial court below granted summary
judgment in favor of Bodywise, Inc., against Tim Bruner, doing business as Tigris Equipment Company
(Bruner). Bruner appeals by two points of error. We will overrule both points and affirm the judgment of
the court below.


BACKGROUND

 The owners of Bodywise, a fitness center, decided to buy new gym equipment in
conjunction with remodeling their facilities. Bruner, who built and sold gym equipment, promised Bodywise
he would build gym equipment comparable in quality to Flexmaster, a well-recognized brand. Bruner
promised to assemble the equipment upon delivery, which he promised would begin approximately two
weeks after the parties contracted. Bodywise gave Bruner a deposit and down payment totaling $4,500. 
Bodywise also paid Bruner $1,242.66 for an order of dumbbells and weights. 

 Almost two months later, the equipment had not been delivered. In response to calls from
Bodywise, Bruner promised several times that he would deliver the equipment. On two of the proposed
delivery dates, Bodywise hired a glass company to remove windows to the gym so the equipment could be
brought inside. Bruner failed to deliver the equipment on either of these occasions.

 When Bruner finally arrived with the equipment, he demanded payment before he would
unload it. Bodywise paid Bruner another $1,600, in addition to sales tax on the equipment. Bruner
unloaded the equipment but failed to assemble it as he had promised. Instead, he left it outside for Bodywise
to assemble and install.

 As delivered, several pieces of equipment were broken, poorly constructed, or missing
altogether. When Bodywise asked Bruner during delivery if he would correct the deficiencies, Bruner
agreed to take one piece of faulty equipment with him to fix and promised to fix the rest of the broken
equipment later. Despite several requests by Bodywise, Bruner never returned the piece he took nor did
he fix the rest of the equipment.

 Bodywise sued Bruner in July 1995, seeking restitution and damages for negligence, breach
of contract, and violations of the Deceptive Trade Practices Act (DTPA). See Tex. Bus. & Com. Code
Ann., Ch. 17 (West 1987 & Supp. 1997). Bruner, acting pro se, filed a general denial. Bodywise obtained
a January 2, 1996, trial setting and notified Bruner by certified mail. The notice was refused on October
7 and October 19. Bodywise then sent notice through regular first-class mail and that notice was not
returned. On January 2, Bodywise appeared and presented evidence of its claims but Bruner failed to
appear. The court rendered a default judgment in Bodywise's favor. Notice of default judgment was then
sent to Bruner. On January 31, Bruner filed a motion for a new trial, which was denied. Bruner then
designated an attorney to represent him and this appeal ensued. 


DISCUSSION

 Bruner contends in his first point of error that the trial court erred by failing to grant his
motion for new trial. To prevail on his motion for new trial, Bruner was required to meet the elements of
a test originally set forth in Craddock v. Sunshine Business Lines. See 133 S.W.2d 124, 126 (Tex. 1939). 
Although the Craddock test was originally formulated to evaluate a motion for new trial after a defendant's
failure to answer and subsequent default judgment, the test also applies to motions filed in response to default
judgments rendered after a defendant answers but fails to appear at trial. See Ivy v. Carrell, 407 S.W.2d
212, 213-14 (Tex. 1966). The Craddock test requires that a defendant establish (1) the failure to appear
was not due to conscious indifference to the case, but due to mistake or accident, (2) he had a meritorious
defense to the original claims, and (3) the granting of a motion for new trial will not delay the trial or
otherwise injure the plaintiff. Craddock, 133 S.W.2d at 126.

 The controversy in this case centers on the first element of the Craddock test. The record
evidence relevant to this element is conflicting. Bruner testified at the hearing on his motion for new trial that
whenever he received documents pertaining to this case, he gave them to his lawyer, Bobby Taylor. Bruner
testified that he missed the January 2 trial setting because Taylor told him the trial was set for January 16. 
He further stated that he fired Taylor on December 25 and requested that Taylor return his files to him. 
According to Bruner, Taylor never returned the files despite Bruner's repeated requests. Bruner intimated
that he was unaware of the January 2 setting because he could not look at his files. On the other hand,
Taylor testified his only involvement in the case was an attempt to negotiate with Bodywise as a friend on
behalf of Bruner when the dispute arose. Taylor testified that Bruner had never retained him in this cause. 
Taylor related that when he told Bruner Bodywise was going to sue him, Bruner replied "I don't care." 
Taylor stated Bruner never gave him any papers in connection with this dispute, and that Taylor never saw
the notice of the January 2 trial setting until after the default judgment had been entered. Furthermore, Taylor
testified he never told Bruner to appear in court on January 16. Finally, there is evidence that Bruner twice
rejected the notice of trial sent by certified mail, whereas the letter sent via regular mail was not returned. 

 The trial court had the discretion to weigh the credibility of the witnesses and resolve the fact
questions. E.g., Jackson v. Mares, 802 S.W.2d 48, 50 (Tex. App.--Corpus Christi 1990, writ denied). 
The court apparently rejected Bruner's testimony and believed Taylor's testimony instead. Taylor's
testimony supports the conclusion that Bruner received the notice of trial setting and deliberately chose to
ignore it.

 Bruner argues the court inaccurately applied the Craddock standard by denying the motion
for new trial upon a finding of mere negligence, as opposed to conscious indifference. The Texas Supreme
Court has instructed us that "conscious indifference" means more than negligence. See Smith v. Babcock
& Wilcox Construction Co., 913 S.W.2d 467, 468 (Tex. 1995). A defendant's failure to appear is not
intentional or due to conscious indifference merely because it is deliberate. It must also be without adequate
justification, which may be proved by accident, mistake, or otherwise reasonable explanation. Id. at 468. 
There is evidence in the record, however, that Bruner attempted to evade receiving the notice of the trial
setting by rejecting the certified mail. There is also evidence that he ultimately received the notice via regular
mail, and despite that, failed to appear for trial. Finally, the fact that Bruner said he "did not care" that
Bodywise planned to sue him supports the idea that he was indifferent about the trial setting. The evidence
supports the conclusion that Bruner was consciously indifferent and not merely negligent in failing to attend
the trial. Because Bruner failed to meet the first element of the Craddock test, we hold the court did not
abuse its discretion in denying Bruner's motion for new trial. Accordingly, we overrule Bruner's first point
of error.

 In his second point of error, Bruner contends the trial court erred in awarding a default
judgment to Bodywise because the evidence admitted at the default judgment hearing was not legally or
factually sufficient to support Bodywise's claims. We note that, in a post-answer default judgment
proceeding, the trial court cannot render judgment on the pleadings; the plaintiff must offer evidence and
prove all aspects of its case. See Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex. 1979). Here, the trial
court found Bruner made "false, misleading and deceptive representations to [Bodywise] upon which
[Bodywise] relied to its detriment and which caused [Bodywise] to enter into contract with [Bruner] for
equipment that was neither merchantable nor fit for the purposes for which the equipment was to be used." 
The court awarded Bodywise $8,033.16 in actual damages, trebled that award, and also awarded
Bodywise $2,500 in attorneys' fees. The court denied all other requested relief. We must decide whether
the evidence supports the trial court's determinations.

 In deciding whether the evidence legally supports any of Bodywise's claims, we consider
only the evidence and inferences tending to support the judgment and disregard all evidence and inferences
to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 487, 499 (Tex. 1995). We will uphold
the judgment if more than a scintilla of evidence supports it. Id. To determine the factual sufficiency of the
evidence, we consider and weigh all the evidence and set aside the judgment only if it is so contrary to the
great weight of the evidence as to be manifestly unjust. In re King's Estate, 244 S.W.2d 660 (Tex. 1951).

 The judgment in favor of Bodywise was supported by evidence that Bruner violated the
Texas Deceptive Trade Practices Act (DTPA). See Tex. Bus. & Com. Code Ann. Ch. 17 (West Supp.
1997). Under the DTPA, a consumer may maintain an action where a breach of an express or implied
warranty causes actual damages. Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (West 1987 & Supp.
1997). (1) The evidence shows Bruner violated an implied warranty of fitness for a particular purpose, which
exists when the consumer relies on the seller's skill or judgment to select or furnish suitable goods for the
particular purpose of which the seller has reason to know. See Tex. Bus. & Com. Code Ann. § 2.315
(West 1994). The record shows that Bodywise was a consumer of the products and services that Bruner
was to provide, i.e., Bodywise was going to use the weights and other equipment to remodel its gym. The
record also reveals that Bruner promised Bodywise he would build gym equipment suitable for fitness
training by deciding which items should be built and ordering weights to go with the equipment. Bodywise
relied on Bruner's expertise by acting on Bruner's assertion that he could provide equipment comparable
to a quality brand. Finally, the record shows the equipment Bruner provided was not usable for the purpose
for which Bruner knew it was intended. There is far more than a scintilla of evidence supporting the trial
court's judgment. We, therefore, hold there was legally and factually sufficient evidence to support the trial
court's ruling on a DTPA theory.

 We also conclude that the court's assessment of actual damages is factually and legally
supported by the evidence. The court awarded $8,033.16 in actual damages. The record contains
evidence of canceled checks that showed Bodywise incurred the following costs in its unsuccessful dealings
with Bruner: (1) the first payment of $4,500 to Bruner; (2) a $1,242.66 payment to Bruner for an order
of dumbbells and weight plates; (3) a $202.50 payment to the glass company; (4) a $488 sales tax payment
to Bruner; and (5) a final $1,600 payment to Bruner. The total of all these costs, incurred by Bodywise in
conjunction with the agreement breached by Bruner, is $8,033.16. 

 The court awarded treble damages for the violation of the DTPA. A plaintiff may receive
treble damages for a violation of the DTPA if he establishes the violation was knowingly committed. See
Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (West Supp. 1997). The record shows Bruner knew the
equipment he provided was unsuitable or defective. At the time of delivery, Bruner actually took a weight
bench back with him to fix, and then later said he was not going to do anything about the other broken or
missing pieces. Because Bruner knowingly violated an implied warranty of fitness for a particular purpose
and, in turn, the DTPA, the trial court's award of treble damages in the amount of $24,099.48 was
warranted.

 The trial court also awarded Bodywise $2,500 in attorneys' fees. A consumer who prevails
on a DTPA claim may recover reasonable and necessary attorneys' fees. Tex. Bus. & Com. Code Ann.
§ 17.50(d) (West Supp. 1997). Bodywise's attorney, Laura Martin, testified that her hourly fee was $165
and that she charged Bodywise a flat fee of $2,500. She also testified that she had worked between fifteen
and twenty hours on this case. This evidence supports the court's determination that Martin's fees were
reasonable and necessary, and the court's inclusion of her fees in the judgment.

 The total of attorneys' fees and trebled actual damages is $26,599.48, which is the total
amount the trial court awarded Bodywise. We find that the trial court's award was both legally and factually
supported by the evidence. We, therefore, overrule Bruner's second point of error.


CONCLUSION

 Having overruled Bruner's points of error, we affirm the judgment of the trial court.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: February 27, 1997

Do Not Publish

1. Bodywise's cause of action arose under an earlier version of the statute. Because recent
amendments do not materially affect this case, we cite to the current code for convenience.


om. Code Ann. § 17.50(a)(2) (West 1987 & Supp.
1997). (1) The evidence shows Bruner violated an implied warranty of fitness for a particular purpose, which
exists when the consumer relies on the seller's skill or judgment to select or furnish suitable goods for the
particular purpose of which the seller has reason to know. See Tex. Bus. & Com. Code Ann. § 2.315
(West 1994). The record shows that Bodywise was a consumer of the products and services that Bruner
was to provide, i.e., Bodywise was going to use the weights and other equipment to remodel its gym. The
record also reveals that Bruner promised Bodywise he would build gym equipment suitable for fitness
training by deciding which items should be built and ordering weights to go with the equipment. Bodywise
relied on Bruner's expertise by acting on Bruner's assertion that he could provide equipment comparable
to a quality brand. Finally, the record shows the equipment Bruner provided was not usable for the purpose
for which Bruner knew it was intended. There is far more than a scintilla of evidence supporting the trial
court's judgment. We, therefore, hold there was legally and factually sufficient evidence to support the trial
court's ruling on a DTPA theory.

 We also conclude that the court's assessment of actual damages is factually and legally
supported by the evidence. The court awarded $8,033.16 in actual damages. The record contains
evidence of canceled checks that showed Bodywise incurred the following costs in its unsuccessful dealings
with Bruner: (1) the first payment of $4,500 to Bruner; (2) a $1,242.66 payment to Bruner for an order
of dumbbells and weight plates; (3) a $202.50 payment to the glass company; (4) a $488 sales tax payment
to Bruner; and (5) a final $1,600 payment to Bruner. The total of all these costs, incurred by Bodywise in
conjunction with the agreement breached by Bruner, is $8,033.16. 

 The court awarded treble damages for the violation of the DTPA. A plaintiff may receive
treble damages for a violation of the DTPA if he establishes the violation was knowingly committed. See
Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (West Supp. 1997). The record shows Bruner knew the
equipment he provided was unsuitable or defective. At the time of delivery, Bruner actually took a weight
bench back with him to fix, and then later said he was not going to do anything about the other broken or
missing pieces. Because Bruner knowingly violated an implied warranty of fitness for a particular purpose
and, in turn, the DTPA, the trial court's award of treble damages in the amount of $24,099.48 was
warranted.

 The trial court also awarded Bodywise $2,500 in attorneys' fees. A consumer who prevails
on a DTPA claim may recover reasonabl